IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| **JACKSON MILLER.** )<br>)<br>**Plaintiff,** )<br>)<br>**V.** )<br>)<br>**DELOITTE SERVICES LP,** )<br>)<br>**Defendant.** )<br>) | **CIVIL ACTION NO. 3:18-cv-00581**<br><br>Judge Aleta A. Trauger |

## **PLAINTIFF'S FIRST AMENDED COMPLAINT**

Comes now Jackson Miller ("Plaintiff") by and through counsel and by and through Next Friend Wanda Padgett, and states as his First Amended Complaint, filed pursuant to Rule 15(a)(1)(B) of the Federal Rules of Civil Procedure, against Deloitte Services LP as follows:

1. Plaintiff, Jackson Miller, is a citizen of the United States and resides at 307 4th Avenue, Columbia, Maury County, TN 38401.

2. Deloitte Services LP, ("Defendant" or "Deloitte") is a Corporation with its Principal Office located at 1633 Broadway, New York, NY 10019-6754. Defendant is authorized to do business in the State of Michigan and the State of Tennessee. Defendant's place of business in Tennessee is 4022 Sells Drive, Hermitage, Davidson County, TN 37076.

3. Defendant may be served with process through its registered agent, Corporation Service Company, at 2908 Poston Ave., Nashville, TN 37203.

4. Lawrence Miller, (hereinafter referred to as "Decedent"), died on June 3, 2013 in Wayne County, Michigan.

5. Plaintiff, born on January 13, 1987, is Decedent's son and lives with his mother, Melissa Underwood Miller (hereinafter "Melissa Miller"), in Columbia, Tennessee.

6. Plaintiff suffers from health and developmental problems since his premature birth, has an IQ of 54, and is unable to live independently and was and remains legally incompetent due to being of unsound mind, as that term is used in the legal sense, at all times relevant hereto.

7. Melissa Miller is Decedent's ex-wife, having been divorced as of June 30, 2005 in Williamson County, Tennessee, Case No.29611, and resides in Maury County, Tennessee, at 307 4th Avenue, Columbia, TN 38401.

8. Phyllis Frevik (hereinafter "Frevik") is the widow of Decedent, and, upon information and belief, is a resident of Wayne County, Michigan, residing at 16981 Carlisle Street, Detroit, Michigan, 48205.[1]

9. This is a civil action arising under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* (hereinafter "ERISA").

10. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e).

11. Decedent was required to name Plaintiff the beneficiary of a life insurance policy in the amount of $500,000 as provided by The Final Decree of Divorce between Underwood and Decedent that was entered on June 30, 2005. Exhibit A.

12. The Final Decree of Divorce incorporated the Mother's Proposed Parenting Plan and the Court's Findings of Fact and Conclusions of Law set forth in the Court's Memorandum Opinion. The Proposed Parenting Plan is attached as part of Exhibit A.

---

[1] Plaintiff received a judgment for $500,000 against Phyllis Frevik in Williamson County Chancery Court on January 11, 2017, as recognized on May 15, 2017. Exhibit B. This judgment is being enforced in Michigan. Plaintiff's counsel anticipates recovery of no more than $200,000, and more likely between $20,000 and $100,000. To date, no monies have been recovered. Upon recovery, a motion to appoint a fiduciary for Plaintiff or otherwise seek court approval will be made in state court to handle distribution of the recovery. Further, a motion to vacate this judgment, filed on December 5, 2017, and denied on June 7, 2018, is currently on appeal by Ms. Frevik. Any monies recovered will reduce the amounts owed by Deloitte to Plaintiff.

13. Per page Six of the Findings of Fact and Conclusions of Law, Decedent was required to maintain "life insurance in the amount of $500,000, naming Jackson as the sole beneficiary." The Findings of Fact and Conclusions of Law is attached hereto as Exhibit C.

14. Defendant employed Decedent.

15. This action arises out of a group life insurance policy entered into by MetLife Insurance Company ("MetLife") with Decedent. Decedent entered into this insurance plan through his employer, Defendant. While Decedent obtained the policy through MetLife, Defendant acted as the intermediary between MetLife and Decedent and/or the Plan Administrator, and Defendant was designated as a "named fiduciary" within the meaning of Section 402(a) of ERISA in regards to the policy. Exhibit D.

16. Plaintiff was designated by Decedent as a beneficiary under Decedent's life insurance plan as evidenced by a change of beneficiary form (dated January 15, 2007) found by Plaintiff's Next Friend in approximately March of 2018, which was sent by Decedent to Melissa Miller , attached hereto as Exhibit E.

17. The Beneficiary Designation Change Form found by Plaintiff's Next Friend is a copy, not an original.

18. Plaintiff's Next Friend found this Beneficiary Designation Change Form in a folder with Melissa Miller's medical records from Patricia Neal Rehabilitation Center in Knoxville, Tennessee and Hillcrest Nursing Home. Exhibit F.

19. The folder containing the medical records and the Beneficiary Designation Change Form contains medical records dated between approximately November 6, 2006 and approximately June 6, 2007.

20. Melissa Miller was receiving medical care as of January 15, 2007 after she suffered a stroke on or about November 6, 2006 and was diagnosed with a cerebral hemorrhage.

21. Melissa Miller scored a 1 out of 7 on a Functional Independence Measure as to memory, problem solving, walking, stairs dressing and expression, when she was admitted to Patricia Neal Rehabilitation Center on or about November 6, 2006, which indicated she needed total assistance.

22. Melissa Miller scored a 2 out of 7 Melissa Miller on a Functional Independence Measure as to comprehension and grooming when she was admitted to Patricia Neal Rehabilitation Center on or about November 6, 2006, which indicated she needed maximum assistance, meaning 75% assistance.

23. Upon transfer to Hillcrest West on or about January 8, 2007, Melissa Miller scored a 1 out of 7 on a Functional Independence Measure as to walking and stairs, indicating total dependence.

24. Upon transfer to Hillcrest West on or about January 8, 2007, Melissa Miller scored a 2 out of 7 on a Functional Independence Measure as to problem solving, memory, and bathing, indicating she needed maximum assistance, meaning 75% assistance.

25. At the time of the transfer to Hillcrest West, it was noted that Ms. Miller scored a 1 out of 7 on a Functional Independence Measure as to dressing her lower body, in part due to issues with decreased sequencing skills.

26. At the time of the transfer to Hillcrest West, it was noted that Ms. Miller could count from 1 to 10 with 100% accuracy, but had minimal to moderate difficulty counting from 1 to 20 and reciting the days of the week, utilizing visual cues.

27. When admitted to Hillcrest West on January 8, 2007, Melissa Miller was diagnosed with an intracranial hemorrhage and flaccid hemiplegia and hemiparesis.

28. Lawrence Miller dated the Beneficiary Designation Form, again found in a folder with medical records dated between November 6, 2007 and June 6, 2007, on January 15, 2017.

29. Melissa Miller, when asked about this Beneficiary Designation Form by the Next Friend in 2018 after the Next Friend's discovery of the form, did not recall seeing the form, had no knowledge of receiving the form, and did not know of the document's existence.

30. Plaintiff, at all relevant times, lacked the capacity to search for and/or understand the Beneficiary Designation Form.

31. The Beneficiary Designation Form references Optional Life Insurance and Basic Life Insurance, totaling $560,000. Exhibit E.

32. Decedent's then wife, Anne Mokrzec, was named as the beneficiary of the basic life insurance policy, in the amount of $50,000. Exhibit E.

33. Per the Beneficiary Designation Form under Optional Life Insurance Beneficiary Designation, Jackson Miller was to receive $350,000, with Anne Mokrzec receiving $160,000. Exhibit E.

34. Decedent divorced Anne Mokrzec on February 28, 2012. Exhibit G.

35. Per the divorce decree, Anne Mokrzec forfeited all rights to any insurance policy in which she may be named Decedent's beneficiary. Exhibit G.

36. Additional MetLife documents establish that Decedent amended his coverage after the Beneficiary Designation Change form, dated 1/15/2007. Exhibit H.

37. Specifically, Decedent changed the Supplemental/Optional Life coverage amount to $524,100 on June 26, 2007. Exhibit H.

38. Further, said document identifies Decedent as having Dependent Life Insurance in the amount of $10,000 as of November 1, 2006. Exhibit H.

39. Said document further identifies Decedent as having a $50,000 basic life insurance policy. Exhibit H.

40. Thus, as of June 26, 2007, the value of the relevant policies was $584,100. Exhibit H.

41. Thereafter, on August 27, 2013, Deloitte sent to MetLife a document that purportedly established that Decedent held a Basic Life policy in the amount of $50,000, with an effective date of April 30, 2009, and that Decedent held a Supplemental/Optional Life Policy, in the amount of $525,000, with an effective date of April 30, 2009. Exhibit I.

42. These policies total $575,000. Exhibit I.

43. Decedent, as of April 18, 2008, no longer worked for Deloitte, as he was placed on disability leave. Exhibit J.

44. On May 27, 2009, Decedent, due to his disability, obtained a premium waiver from MetLife for the Basic ($50,000), Optional ($525,000) and Dependent ($10,000) life insurance policies he held. Exhibit K.

45. Upon Decedent's death, Jackson Miller's mother made a claim, for Jackson Miller's benefit, to Deloitte, for the insurance based upon the divorce decree requiring Decedent to maintain life insurance in the amount of $500,000 for Jackson Miller. Exhibit L.

46. MetLife denied the claim of Jackson Miller on September 19, 2013, stating, "The Decedent did not have a beneficiary on file with the Plan. When there is no eligible, designated beneficiary on file with the plan, benefits are paid in accordance with the line of succession provision in the Plan as stated above." Exhibit L.

47. The September 19, 2013 letter further notes, when there is no beneficiary designation, payment will be made to the first of the following: " . . . "the Insured's (a) lawful spouse or domestic partner; . . ." Exhibit L.

48. On December 23, 2013, MetLife distributed $576,598.67 to Decedent's then wife, Phyllis Miller aka Phyllis Frevik. Exhibit M.

49. Melissa Miller has never been appointed as the legal representative of Jackson Miller.

50. Prior to receiving approximately $100,000 from a retirement account of Decedent's at Charles Schwab, the Jackson Miller Supplemental Need Trusts was created, with First Farmers Merchants Bank as trustee. Exhibit N.

51. This Self Settled Trust was approved by order of the Chancery Court of Maury County, Tennessee, on August 29, 2014. Exhibit O.

52. The group universal life insurance policy that is the subject of this lawsuit was issued by Defendant to Decedent while Decedent was employed by Defendant.

53. The policy in question is subject to ERISA.

54. The Summary Plan Description ("SPD") in question states that a beneficiary designation can be made by "accessing the enrollment application or completing a form that can be obtained on the Benefits section of DeloitteNet or by contacting the CallCenter. If you name more than one beneficiary, you must state in percentages (not dollar amounts) how much of the benefit should be paid to each beneficiary." Exhibit P. While such SPD is effective January 2012, Plaintiff, until discovery is conducted, has no reason to believe a similar provision was not effective as of January 15, 2007.

**COUNT I – Action to Recover Plan Benefits and Enforce Rights Under the Plan Pursuant to 29 U.S.C. § 1132(a)(1)(B).**

55. Paragraphs 1-54 are incorporated herein.

56. Plaintiff, as a designated beneficiary under the January 15, 2007 Beneficiary Designation Form, is a beneficiary of the life insurance policies held by Decedent through Deloitte.

57. To the extent Anna Mokzrec is also named as a beneficiary on the January 15, 2007 Beneficiary Designation, her divorce decree from Decedent clearly disavows any benefits she had under any life insurance policy held by Decedent.

58. Decedent, upon information and belief, mailed or otherwise sent or advised Deloitte of the January 15, 2007 Beneficiary Designation.

59. Under Deloitte's SPD, effective January 2012 (and not necessarily applicable in this case), Decedent substantially complied with the terms of the SPD in order to effectuate a beneficiary designation.

60. Under New York law (again, as identified in the 2012 SPD) or federal common law, this designation was sufficient to name Jackson Miller as the Beneficiary.

61. Upon information and belief, Deloitte failed to honor the Designation of Beneficiary Form because Defendant did not list in percentages the amount each beneficiary was to receive, as required by the SPD.

62. Upon information and belief, Deloitte failed to honor the Designation of Beneficiary Form because, in the process of handling Decedent's disability claim, Deloitte lost, misplaced, or otherwise deleted the Designation of Beneficiary Form.

63. For example, pre-disability, Decedent's policies were in the amounts of $524,100 for Supplemental/Optional Life, $50,000 for Basic Life, and $10,000 for Dependent Life. Exhibit H.

64. Post-disability Decedent's policies were in the amounts of $525,000 for Supplemental/Optional Life, $50,000 for Basic Life, and $10,000 for Dependent Life. Exhibit K.

65. MetLife paid only the Supplemental/Optional Life policy and Basic Life based on information sent by Deloitte. Exhibit I.

66. Further, any administrative exhaustion requirements in this context would have been futile.

67. Plaintiff's mother, Melissa Miller, filed a claim with Deloitte for the policy benefits, which was rejected.

68. Deloitte rejected the claim, filed on Jackson Miller's behalf, on the basis that no beneficiary was listed on Decedent's insurance policy. Exhibit L.

69. As Deloitte clearly represented that it had no beneficiary designation on file, and Plaintiff, incompetent at the time and today, did not know that a Beneficiary Designation Form existed, it would have been futile to appeal Deloitte's decision.

70. Further, any statute of limitations on this claim, or any time limit to bring a claim as set forth in Defendant's policies, is tolled due to Plaintiff's disability under Tennessee state law, Tenn. Code Ann. § 28-1-106(c)(1) or New York law, N.Y. C.P.L.R. 208.

71. Further, to the extent federal law provides the statute of limitations or the tolling procedure, this claim is subject to equitable tolling because Plaintiff's disability was the but for cause of his inability to previously assert the existence of this January 15, 2007 Beneficiary Designation Form.

72. Specifically, while others have helped Plaintiff bring lawsuits in the past, Plaintiff's mother was hospitalized at the time she received the January 15, 2007 Beneficiary Designation Form due to a stroke.

73. Plaintiff's mother, Melissa Miller, as of January 8, 2007, for example, lacked the ability to count to twenty without visual cues and similarly lacked the ability to recite the days of the week.

74. Melissa Miller's problem solving, memory and bathing at this time was scored as a 2 on a scale of 7, meaning she needed maximum assistance.

75. Additionally, Melissa Miller scored a 1 out of 7 on a Functional Independence Measure as to dressing her lower body, in part due to issues with decreased sequencing skills.

76. Plaintiff's Next Friend found the Beneficiary Designation Form in approximately March of 2018 in a folder with Plaintiff's mother's medical records dated approximately November 7, 2006 through June 6, 2007.

77. Plaintiff's mother, upon reviewing the Beneficiary Designation Form in 2018, had no knowledge of the Form, had not seen it before, and did not recall receiving it.

78. Melissa Miller, who based Plaintiff's claim to the insurance proceeds on the divorce decree, did not have severe competency issues at the time of the divorce in mid-2005, as she did when she received the Beneficiary Designation Form in January 2007.

79. Defendant advised MetLife that no beneficiary designation existed.

80. At all times material hereto Plaintiff, and upon information and belief, Decedent, complied with all conditions precedent to entitle Plaintiff to benefits under the Policy, however, MetLife refused to pay Plaintiff the Policy benefit due to Defendant's failure to submit to MetLife the Change of Beneficiary Form, which Decedent filled out and signed, listing Plaintiff as Beneficiary.

81. Plaintiff is entitled to the Policy benefit and any such damages as he may prove because of the Defendant's failure to pay the benefit owed to Plaintiff under the Policy.

82. As a direct and proximate result of such acts or omissions by Defendant, Plaintiff has sustained damages including but not limited to: loss of the Policy benefit due and owing to him, which at the time of filing this Complaint $575,000; losses as a result of the Defendant's failure to pay the Policy benefit to him; interest on the Policy benefit owed; costs and attorneys' fees incurred as a result of pursuing his claim under the Policy with Defendant and the filing of this lawsuit.

83. Plaintiff therefore requests a judgment in the amount of no less than $575,000, plus reasonable attorney's fees under 29 U.S.C. § 1132(g).

**COUNT II - Breach of Fiduciary Duties Against Deloitte Pursuant to 29 U.S.C. § 1132(a)(3)**

84. Paragraphs 1-83 are incorporated herein.

85. Under ERISA, a fiduciary duty complaint is subject to a three year statute of limitations where the plaintiff had actual knowledge of the violation, and is otherwise subject to a six year statute of repose.

86. The six years runs from the last act or omission by the fiduciary that could have cured the breach, which, in the context of beneficiary designations, is the death of the employee/participant, which occurred in this case on June 3, 2013.

87. As set forth above, Plaintiff, Plaintiff's mother, and Plaintiff's next friend did not have actual knowledge of the breach of fiduciary claim, or any claims, against Deloitte, until approximately march of 2018, upon finding the Designation Beneficiary Form, dated January 15, 2007.

88. The statute of repose therefore applies, and this case is clearly brought within six years of the last act or omission that could have cured the breach.

89. Pursuant to 29 U.S.C. § 1132(a)(3), a beneficiary can bring a civil action to obtain appropriate equitable relief to redress any violations of the terms of the plan or relevant federal law.

90. Pursuant to 29 U.S.C. §1104(a)(1), a fiduciary such as Deloitte must administer the plan with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in such situation.

91. Upon information and belief, Deloitte, upon receiving the Beneficiary Designation form from Decedent, disregarded the form as it did not list the beneficiaries' receipts in a percentage amount, as required by an SPD effective January 2012.

92. Upon information and belief, Deloitte, upon disregarding the Beneficiary Designation Form from Decedent dated January 15, 2007, failed to notify Decedent of its rejection of the Beneficiary Rejection Form.

93. Upon information and belief, Deloitte otherwise failed to provide MetLife the Beneficiary Designation form dated January 15, 2007, whether Deloitte lost the form, misplaced it, or otherwise disregarded the Beneficiary Designation Form.

94. Upon information and belief, Deloitte had ample opportunities to breach its fiduciary duties in keeping the Beneficiary Designation Form on file after it was submitted on January 15, 2007, including a policy change by Decedent on June 26, 2007, Decedent's last day worked of April 18, 2008, and the approval of Decedent's request for a premium waiver based upon his disability on April 30, 2009. Given that the values of Decedent's policies were modified at this time, in April of 2009, it is more than plausible that Deloitte breached its

12
Case 3:18-cv-00581   Document 15   Filed 08/30/18   Page 12 of 15 PageID #: 319

fiduciary duties and destroyed or otherwise misplaced the January 15, 2007 Beneficiary Designation Form.

95. As a consequence of Deloitte's gross negligence and breach of fiduciary duties in regards to handling and maintaining the January 15, 2007 Beneficiary Designation Form, Plaintiff has suffered actual harm in the form of monetary loss in an amount no less than $500,000, plus interest and attorneys' fees.

96. Therefore, Plaintiff requests, as a result of Deloitte's breach of said fiduciary duties, that this Court exercise the equitable relief available to it and grant Plaintiff a judgment, whether designated damages or a surcharge, in the amount of the value of the policy, no less than $575,000, and his attorneys' fees incurred in this matter.

## **COUNT III – Appointment of a Guardian Under Rule 17 of the FRCP**

97. Paragraphs 1-96 are incorporated herein.

98. Plaintiff is domiciled in the State of Tennessee.

99. Plaintiff lacks competency under Tenn. Code Ann. § 28-1-106 as Plaintiff is of unsound mind. He cannot carry his daily functions or legal dues and rights, relying on others to handle his affairs.

100. Plaintiff requests, under Rule 17(c)(2) of the Federal Rules of Civil Procedure, that this Court appoint a guardian ad litem or issue another appropriate order to protect Plaintiff in this matter.

101. Plaintiff submits, in an effort to reduce unnecessary fees and costs, that a potential alternative to the appointment of a guardian ad litem is to allow this action to play out, requiring the appointment of a fiduciary upon any judgment or settlement, with the Court retaining jurisdiction to approve any settlement on behalf of the incompetent Plaintiff.

WHEREFORE, Plaintiff hereby prays that the following relief be granted to him:

A. Actual damages in excess of $500,000, as the court or jury may deem appropriate for the Defendant's violations under ERISA, including the full Policy benefit plus interest;

B. All damages suffered by Plaintiff as a result of the Defendant's violations under ERISA;

C. Attorney's fees, interest, and costs to the extent allowed under the law against Defendant; and/or

D. Such other and further relief as this Court deems just and proper against Defendant, including the appointment of a guardian ad litem, as this Court deems necessary.

WHEREFORE, Plaintiff respectfully requests this Court to declare that Plaintiff is the rightful beneficiary of the Policy benefit and to award Plaintiff the Policy benefit to which he is entitled, as well as interest, attorneys' fees and costs, and grant such other relief as this Court deems just and proper.

Plaintiff, by and through his undersigned counsel and next friend, demands trial by jury as to all issues so triable.

Respectfully Submitted by,

s/Charles Michels
Charles Michels, BPR# 031232
Gino Marchetti, BPR # 5562
Taylor, Pigue, Marchetti & Blair, PLLC
2908 Poston Avenue
Nashville, TN 37203
(615) 320-3225
cmichels@tpmblaw.com

## CERTIFICATE OF SERVICE

      The undersigned hereby certifies that a true and correct copy of the foregoing was served via the Court's CM/ECF system on August 29, 2018.

                                            /Charles Michels
                                            Charles Michels

Anthony Joel McFarland
Bass, Berry and Sims, PLC
150 Third Avenue South
Suite 2800
Nashville, TN 37201

Christopher Boran
Morgan, Lewis & Bockius, LLP
77 West Wacker Drive
Fifth Floor
Chicago, IL 60601