# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| JACKSON MILLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 3:18-cv-00581 |
| DELOITTE SERVICES LP, | ) | Judge Aleta A. Trauger |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

## MEMORANDUM

Plaintiff Jackson Miller, by and through his "Next Friend" Wanda Padgett, has filed suit against Deloitte Services LP ("Deloitte"), asserting claims under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.* Now before the court is Deloitte's Motion to Dismiss the Amended Complaint (Doc. No. 19), arguing that (1) the Amended Complaint fails to allege sufficient facts to support the plaintiff's claim of entitlement to the recovery of life insurance benefits; (2) the ERISA claim for breach of fiduciary duty is barred by the statute of limitations; and (3) the plaintiff failed to exhaust administrative remedies required to pursue his claim under 29 U.S.C. § 1132(a)(1)(B).

For the reasons set forth herein, the motion will be denied.

## I. Factual Allegations and Procedural Background

According to the allegations in the First Amended Complaint, the plaintiff was born in 1987 to Melissa Underwood Miller ("Underwood") and Wayne Lawrence Miller (the "decedent"). Underwood and the decedent divorced in 2005. The decedent died on June 3, 2013

in Wayne County, Michigan. (Doc. No. 15 ¶¶ 4, 5, 7.) The plaintiff, who lives with his mother, suffers from severe physical health problems and intellectual deficits. He has an IQ of 54, is unable to live independently, and remains—and is likely to remain—legally incompetent. (*Id.* ¶ 6.)

Phyllis Frevik is the decedent's widow. She resides in Wayne County, Michigan. (*Id.* ¶ 8.)

The Final Decree of Divorce between Underwood and the decedent incorporated Underwood's proposed Parenting Plan, which required the decedent to name the plaintiff as the beneficiary of a life insurance policy in the amount of $500,000. (*Id.* ¶¶ 11, 13; Permanent Parenting Plan, Doc. No. 15-1 § III.E.)

The decedent was an employee of defendant Deloitte at the time he obtained life insurance through an ERISA welfare benefit plan (the "Plan") offered by Deloitte. The life insurance policy ("Policy") was issued by MetLife Insurance Company ("MetLife"). (Doc. No. 15 ¶¶ 14, 15.) Although the decedent obtained the Policy through MetLife, the defendant acted as the Plan Administrator or intermediary between MetLife and the decedent and was designated as a "'named fiduciary' within the meaning of Section 402(a) of ERISA." (*Id.* ¶ 15.)

The plaintiff asserts that he was designated by the decedent as a beneficiary under the Policy. The factual basis for that assertion is that, in March 2018, his Next Friend found a copy of a Designation of Beneficiary Form dated January 15, 2007, which had evidently been mailed by decedent to Underwood around that time. (*Id.* ¶¶ 16, 17; Doc. No. 15-5.) The Next Friend found the copy of the Designation of Beneficiary Form in a folder with Underwood's medical records dating from November 2006 through June 2007. (Doc. No. 15 ¶¶ 18, 19.) From November 2006 through June 2007, Underwood was receiving medical care as a result of a

stroke and cerebral hemorrhage suffered in November 2006. (*Id.* ¶ 20.) Throughout that time period, she was physically and mentally incapacitated. (*Id.* ¶¶ 21–27.) When asked about the Designation of Beneficiary Form after the plaintiff's Next Friend found it in 2018, Underwood did not recall ever having seen it and had not previously known of its existence. The plaintiff himself lacked the capacity to search for or understand the form. (*Id.* ¶¶ 29, 30.)

The Designation of Beneficiary Form references Optional Life Insurance and Basic Life Insurance totaling $560,000. (*Id.* ¶ 31; Doc. No. 15-5.) The decedent's then-wife, Anne Mokrzec, was named as the beneficiary of the basic life insurance policy in the amount of $50,000. (Doc. No. 15 ¶ 32; Doc. No. 15-5.) The plaintiff was to receive $350,000 of the Optional Life Insurance. (Doc. No. 15 ¶ 33; Doc. No. 15-5.)

The decedent divorced Anne Mokrzec in 2012. (Doc. No. 15 ¶ 34.) Per the divorce decree, Mokrzec forfeited all rights to any insurance policy naming her as the decedent's beneficiary. (*Id.* ¶ 35.)

The plaintiff contends that "[a]dditional MetLife documents establish that Decedent amended his coverage after the Beneficiary Designation Change form." (*Id.* ¶ 36.) Specifically, in June 2007, the decedent changed the Supplemental/Optional Life coverage amount to $524,100. (*Id.* ¶ 37; Doc. No. 15-8.) That sum, combined with Dependent Life Insurance in the amount of $10,000 and Basic Life Insurance in the amount of $50,000, meant that the value of the decedent's life insurance policies at that time was $584,100. (Doc. No. 15 ¶¶ 38–40.) In addition, the decedent ceased working for Deloitte on April 18, 2008 and was placed on disability leave. (*Id.* ¶ 43.) He obtained a premium waiver from MetLife, due to his disability, on May 27, 2009. (*Id.* ¶ 44' Doc. No. 15-10.) The letter from MetLife to Deloitte approving the disability waiver states, in pertinent part: "[I]t is our opinion that the medical information

submitted supports total disability as defined in your group plan. Therefore, we are recommending approval of the claim effective April 20, 2009." (Doc. No. 15-10.)

Upon the decedent's death in June 2013, Underwood, who has never been appointed as the plaintiff's legal representative, made a claim on behalf of the plaintiff for the MetLife life insurance proceeds, based upon the divorce decree requiring the decedent to maintain life insurance to benefit the plaintiff in the amount of $500,000. (Doc. No. 15 ¶ 45.) MetLife denied the claim, notifying Underwood that "[t]he Decedent did not have a beneficiary on file with the Plan. When there is no eligible, designated beneficiary on file with the Plan, benefits are paid in accordance with the line of succession provision in the Plan as stated above." (*Id.* ¶ 46; Doc. No. 15-12.) In accordance with the Plan's line of succession, MetLife distributed life insurance proceeds in the amount of $576,598.67 to the decedent's widow, Phyllis Frevik. (Doc. No. 15 ¶ 48; Doc. No. 15-13.)[1]

MetLife's denial of the claim was based on information provided to it by Deloitte. In August 2013, Deloitte sent to MetLife a Life Insurance Claim Form stating that the decedent's "most recent beneficiary designation" was not available and that he had life insurance coverage with a total value of $575,000 with an effective date of April 30, 2009. (Doc. No. 15 ¶¶ 41, 42; Doc. No. 15-9.) The plaintiff points out that the Life Insurance Claim Form does not indicate that the decedent had Dependent Life Insurance coverage in the amount of $10,000, despite the confirmation in the April 9, 2009 Statement of Review (Doc. No. 15-8) that such coverage was still in effect at least as of that date. He argues that, "[g]iven that the values of Decedent's

---

[1] The plaintiff notes that he received a judgment in the amount of $500,000 against Phyllis Frevik in Williamson County Chancery Court on January 11, 2017, which he is attempting to enforce in Michigan. (Doc. No. 15 at 2 n.1.) Plaintiff's counsel anticipates recovery of between $20,000 and $100,000 and, in any event, less than $200,000. He stipulates that any monies recovered in that case will reduce the amounts he is owed by Deloitte. (*Id.*)

policies were modified at this time, in April of 2009, it is more than plausible that Deloitte breached its fiduciary duties and destroyed or otherwise misplaced the January 15, 2007 Beneficiary Designation Form." (Doc. No. 15 ¶ 94.)

Based on these allegations, the plaintiff brings two substantive, ERISA-based claims in this case. In Count I, he makes a claim based on his entitlement to recover plan benefits and enforce rights under an ERISA plan pursuant to 29 U.S.C. § 1132(a)(1)(B). In support of this claim, he asserts that the January 2007 Designation of Beneficiary form identifying the plaintiff as a beneficiary of the Policy should have been in Deloitte's files, that the Designation of Beneficiary Form was sufficient to name the plaintiff as a beneficiary of the Policy, and that Deloitte failed to honor the decedent's Designation of Beneficiary, either because it did not identify by percentage the amount each beneficiary was to receive or because Deloitte lost, misplaced, or otherwise deleted the Designation of Beneficiary Form. (Doc. No. 15 ¶¶ 56–62.) He argues that, although the decedent had post-disability coverage in the amount of $585,000, including $10,000 in dependent coverage, "MetLife paid only the Supplemental/Optional Life policy and Basic Life based on the information sent by Deloitte [in] Exhibit I." (*Id.* ¶ 65.) The plaintiff asserts that the decedent complied with all conditions precedent to entitle the plaintiff to receive benefits under the Policy, but MetLife denied his claim as a result of Deloitte's acts and omissions. The plaintiff also asserts that, based on the facts alleged, the defendant cannot establish that his claim is barred by failure to exhaust or the statute of limitations. He seeks damages in the amount of $575,000 plus attorney's fees.

In Count II, the plaintiff asserts a claim of gross negligence and breach of fiduciary duty by Deloitte under 29 U.S.C. § 1132(a)(3), based on essentially the same facts alleged in support of Count I, specifically that Deloitte breached its fiduciary duty either by rejecting the

Designation of Beneficiary Form without notifying the decedent that it was doing so or by losing, misplacing or otherwise disregarding the Form and failing to provide it to MetLife. (Doc. No. 15 ¶¶ 92, 93.) He seeks damages in the minimum amount of the value of the Policy plus attorney's fees.[2]

The original Complaint initiating this action was filed on June 25, 2018. (Doc. No. 1.) The Amended Complaint was filed on August 30, 2018. On October 4, 2018, Deloitte filed its Motion to Dismiss and supporting Memorandum (Doc. Nos. 19, 20), to which the plaintiff filed a Response (Doc. No. 22). Deloitte filed a Reply. (Doc. No. 23.) In its motion, Deloitte asserts that (1) both Counts I and II in the Amended Complaint fail to state a claim for which relief may be granted and are subject to dismissal under Rule 12(b)(6); (2) the claim for breach of fiduciary duty, Count II, is time-barred; and (3) the plaintiff failed to exhaust administrative remedies required for Count I.

The plaintiff responds that the allegations in the Amended Complaint are sufficient to support an inference that the decedent submitted the Designation of Beneficiary Form to Deloitte in January 2007 and that Deloitte failed to act upon the decedent's request. He also maintains that his claim is not barred by the statute of limitations and that he alleges facts that, if true, establish that administrative exhaustion under ERISA would have been futile. (Doc. No. 22.) Deloitte's Reply maintains that the plaintiff's allegations establish that he is not entitled to relief.

## II. Standard of Review

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court

---

[2] In Count III, the plaintiff requests the appointment of a guardian ad litem under Rule 17(c) of the Federal Rules of Civil Procedure or, alternatively, to "allow this action to play out" and "require[e] the appointment of a fiduciary upon any judgment or settlement, with the Court retaining jurisdiction to approve any settlement on behalf of the incompetent Plaintiff." (Doc. No. 15 ¶ 101.)

must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). The Federal Rules of Civil Procedure require that a plaintiff provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (quoting Fed. R. Civ. P. 8(a)(2)). The court must determine whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

The complaint's allegations, however, "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To establish the "facial plausibility" required to "unlock the doors of discovery," the plaintiff cannot rely on "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action"; instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## III. Analysis

### A. Rule 12(b)(6)

The plaintiff alleges that, in January 2007, the decedent completed a form designating the plaintiff as the beneficiary of $350,000 in life insurance under the Policy; (2) the decedent "mailed, sent or otherwise advised Deloitte" of the designation; and (3) Deloitte then lost, rejected or otherwise failed to provide the form to MetLife. (Doc. No. 15 ¶¶ 58, 93.) The defendant argues, in essence, that the facts as alleged lack evidentiary support, as the only actual evidence the plaintiff offers in support of his theories of recovery in Counts I and II are that (1)

the divorce decree required the decedent to maintain a $500,000 life insurance policy naming the plaintiff as sole beneficiary and (2) his Next Friend discovered the January 2007 Designation of Beneficiary Form in March 2018. The defendant points out that the Designation of Beneficiary Form does not comply with either of the two requirements in the divorce decree, because it does not name the plaintiff as sole beneficiary and is not in the amount of $500,000. The defendant also insists that the Amended Complaint offers only speculation—"information and belief"—as opposed to actual facts showing that the decedent mailed the Designation of Beneficiary Form to Deloitte or that Deloitte received the form but somehow mishandled it.

In response, the plaintiff denies that his claim is "based solely on the beneficiary designation form dated January 15, 2007." (Doc. No. 22, at 8.) He asserts that he has also "alleged facts that, if true, show entitlement to relief and support an inference that Defendant made a mistake when it revised Decedent's life insurance policy after Decedent's request for a disability premium waiver on April 9, 2009." (Doc. No. 22, at 7.) He claims that his argument is

> based upon a combination of the beneficiary designation form, found in March of 2018, and the discovery responses received from MetLife in August of 2017. These discovery responses establish that Decedent held a life insurance policy with Defendant since November 1, 2006 but, after Decedent requested a premium waiver on or about April 9, 2009, Defendant changed the effective date of Decedent's life insurance policy to April 30, 2009. (Am. Compl., Ex. J.)

(Doc. No. 22, at 8.) He insists that these allegations, even to the extent they are based upon "information and belief," are not conclusory but are, instead, specific facts that "raise a plausible inference of wrongdoing." (*Id.* (quoting *Cates v. Crystal Clear Techs., LLC*, No. 3:16-CV-08, 2016 WL 4379220, at *2 n.5 (M.D. Tenn. Aug. 17, 2016)).) He maintains that "common sense dictates that it is more likely than not" that the decedent also mailed to Deloitte the same Designation of Beneficiary Form that he mailed to the plaintiff's mother "or that Defendant would have honored the beneficiary designation form had it been turned in to Defendant by

Plaintiff's mother." (Doc. No. 22, at 9.) He insists on this basis that the facts as alleged "raise a plausible inference of wrongdoing and establish, if true, an entitlement to relief." (*Id.*)

In its Reply, the defendant insists that the plaintiff's theory regarding a change in the effective date of the policy is an entirely new theory not pleaded in the Amended Complaint but, instead, supported only by general references to Exhibits I and J. It also argues that the plaintiff offers "an unsupported and illogical interpretation" of those exhibits and is "plainly trying to reverse-engineer an unpled theory of relief in hopes of avoiding dismissal." (Doc. No. 23, at 2.)

The court finds, first, that the plaintiff's reliance on the premium waiver documents is adequately pleaded in the Amended Complaint and, second, that the facts as pleaded would allow a jury "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. That is, the fact that the decedent mailed to Underwood a copy of a Designation of Beneficiary Form in January 2007 permits a factfinder to infer that the decedent mailed the original form to Deloitte at or about the same time and that Deloitte lost or mishandled the form. Although the Amended Complaint does not expressly rely upon the April 2009 "effective date" reflected on the information Deloitte sent to MetLife as evidence that supports his claims, the Amended Complaint does argue that the other changes also reflected on Deloitte's approval of the premium waiver indicate a mishandling of the Policy. The plaintiff's current emphasis on the effective date of the Policy, as reflected in Exhibit I to the Amended Complaint, is not so much a change in theory as a change of focus on the evidence in support of the same theory.

The court notes that, although not designated as such, the defendant's argument actually falls more comfortably within Rule 11(b)(3) of the Federal Rules of Civil Procedure, insofar as it maintains that the plaintiff's factual allegations lack evidentiary support. Regardless of how it is

characterized, the court will reject the defendant's motion to dismiss Counts I and II under Rule 12(b)(6).

**B.      Application of Statute of Limitations to Count II**

The defendant also argues that the plaintiff's claim for breach of fiduciary duty is barred by the three-year statute of limitations set forth in 29 U.S.C. § 1113(2), triggered on the date the plaintiff obtained actual knowledge of the breach. The defendant claims that the plaintiff, through his mother, had actual knowledge of the alleged breach no later than September 2013, when MetLife denied the claim for benefits made on the plaintiff's behalf and, therefore, that the claim is time-barred. The plaintiff responds that neither he nor his mother had actual knowledge of the breach until the 2018 discovery of the copy of the 2007 Designation of Beneficiary Form and that his claim is not barred either by the the six-year statute of limitations in 29 U.S.C. § 1113(1) or the three-year period established by § 1113(2).

"[A]s a general rule, a plaintiff is not required to plead facts placing a claim within the limitations period because the statute of limitations is an affirmative defense for which the defendant bears the burden of proof." *See Howell v. Farris*, 655 F. App'x 349, 350 (6th Cir. 2016) (citations omitted). At the same time, however, "where the face of the complaint discloses a failure to file within the time allowed," the plaintiff incurs an obligation to "come forward with allegations explaining why the statute of limitations should be tolled." *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 520 (6th Cir. 2008); *see also Howell*, 655 F. App'x at 350.

Under ERISA, when a fiduciary breaches an obligation or duty, the victim of the breach normally has six years in which to file suit. 29 U.S.C. § 1113(1). However, this period may be shortened to three years where the victim had "actual knowledge of the breach or violation." 29

U.S.C. § 1113(2); *Wright v. Heyne*, 349 F.3d 321, 327 (6th Cir. 2003).[3] The plaintiff's argument, in a nutshell, is that the last action that constituted breach by Deloitte took place in 2013, when it denied the plaintiff's claim. The six-year period running from that date had not expired by the time he filed this action. He argues that the three-year period does not apply, because he did not have actual knowledge of the facts giving rise to the cause of action until his Next Friend's discovery of the Designation of Beneficiary Form in 2018.

"[T]he relevant knowledge required to trigger the statute of limitations under 29 U.S.C. § 1113(2) is knowledge of the facts or transaction that constituted the alleged violation; it is not necessary that the plaintiff also have actual knowledge that the facts establish a cognizable legal claim under ERISA in order to trigger the running of the statute." *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 519 (6th Cir. 2008) (quoting *Wright v. Heyne*, 349 F.3d 321, 330 (6th Cir. 2003)). Thus, here, as in *Bishop*, the question posed by the defendant's motion is "whether plaintiff['s] complaint contains sufficient allegations, either direct or inferential, to facially support the conclusion that [he] first acquired actual knowledge of 'the facts or transaction that constituted the alleged violation' at some point in time less than three years prior to the filing of [his] complaint." *Id.* at 519–20.

---

[3] The statute states:

No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of–

(1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation, or

(2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation . . . .

29 U.S.C. § 1113.

The facts as alleged by the plaintiff establish that the actionable breach of fiduciary duty took place in September 2013, when the plaintiff learned, through his mother, that his claim for life insurance benefits had been denied, because Deloitte had informed MetLife that the decedent had failed to designate any beneficiary under the Policy. By then, the defendant claims, Underwood had been in possession of the Designation of Beneficiary Form for more than six years. Thus, it claims, the plaintiff, through his representatives, was charged with knowing all the key facts to support his claim at that time: that his father had submitted the Designation of Beneficiary Form and that Deloitte breached its fiduciary duty by losing or otherwise mishandling the form. (Doc. No. 20, at 11.) The defendant argues, in essence, that "a plaintiff may not avoid commencement of the statute of limitations merely by refusing to read or examine information disclosing relevant facts that would trigger the statute of limitations." *Shirk v. Fifth Third Bancorp*, No. 05-CV-049, 2009 WL 3150303, at *3 (S.D. Ohio Sept. 30, 2009); *see also Zirnhelt v. Mich. Consol. Gas. Co.*, 526 F.3d 282, 289 (6th Cir. 2008) (holding that, where an investor was given plan documents informing her of vesting requirements, she had actual knowledge of the facts giving rise to her claim for breach of fiduciary duty).

The plaintiff responds that (1) his mother cannot properly be considered to be his agent for purposes of learning the facts to support his claim, and (2) even if she is deemed his agent, she did not have actual knowledge of the breach, because she was incompetent in 2007 and never saw or knew about the Designation of Beneficiary Form until 2018.

The question posed here is when did the plaintiff have "actual knowledge" of the facts establishing a cognizable legal claim under ERISA. *Bishop*, 520 F.3d at 519; *Wright*, 349 F.3d at 330. As indicated above, "actual knowledge means knowledge of the underlying conduct giving rise to the alleged violation, rather than knowledge that the underlying conduct violates ERISA." *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547–48 (6th Cir. 2012). Here, the mere fact that Deloitte denied

the plaintiff's claim for benefits, standing alone, would not provide actual knowledge of the facts supporting a cognizable cause of action, unless the plaintiff also knew or had reason to know that Deloitte had received but mishandled the decedent's Designation of Beneficiary Form. And, while the provision of documents to a plaintiff would generally supply the requisite knowledge, *see, e.g.*, *Brown v. Owens Corning Inv. Review Comm.*, 622 F.3d 564, 571 (6th Cir. 2010), in this case, the plaintiff has alleged facts that, if true, might support a basis for tolling the statute of limitations for some period of time.

The Sixth Circuit applies the doctrine of equitable tolling sparingly, and very rarely in the context of an ERISA case. *See Brown v. Owens Corning Inv. Review Comm.*, 622 F.3d 564, 575 (6th Cir. 2010) (noting at that time that it had located only one ERISA case applying equitable tolling). Generally, the court is to consider five factors in determining whether equitable tolling is justified: "1) lack of notice of the filing requirement; 2) lack of constructive knowledge of the filing requirement; 3) diligence in pursuing one's rights; 4) absence of prejudice to the defendant; and 5) the plaintiff's reasonableness [in] remaining ignorant of the particular legal requirement." *Id.* (quoting *Truitt v. County of Wayne*, 148 F.3d 644, 648 (6th Cir. 1998)).

The application of these factors to this case is not straightforward, in large part because it is unclear who was the plaintiff's agent when. While it appears that his mother was functioning as his agent in 2013, for purposes of submitting the claim for life insurance benefits, she may not have been his agent in 2007 when she herself was apparently incompetent as a result of a stroke and cerebral hemorrhage in November 2006. The record does not reveal when she returned to competence, and the parties have not briefed what responsibility she had to comb records received during her period of incompetence to ascertain what she might have missed. For purposes of the Motion to Dismiss, at least, the plaintiff alleges facts supporting a lack of knowledge, actual or constructive, of the submission of the Designation of Beneficiary Form and that his lack of knowledge, under all the circumstances, was not unreasonable. Regarding the third factor, the plaintiff acted promptly to

protect his rights after the discovery of the Designation of Beneficiary Form. Finally, any possible prejudice to the defendant is slight, in light of the fact that the case was filed well within the alternative six-year limitations period running from the date the plaintiff's claim was denied.

In short, the court finds that the Amended Complaint adequately alleges facts that, if true, would establish, for purposes of the Motion to Dismiss, that the plaintiff did not have actual knowledge of all of the facts necessary to establish the existence of a cognizable claim until 2018 and that the Amended Complaint was filed within the six-year statute of limitations. Alternatively, the Amended Complaint alleges facts that support tolling of the statute of limitations.

### C. Failure to State a Claim for Denial of Benefits

In the context of its exhaustion discussion, the defendant argues that the plaintiff's denial-of-benefits claim under 29 U.S.C. § 1132(a)(1)(B) fails because the plaintiff does not allege that MetLife's denial of the claim was incorrect based on the information in its possession. "Without any allegation that MetLife failed to follow the terms of the Plan," Deloitte claims, the only avenue for relief available to the plaintiff is his claim for breach of fiduciary duty against Deloitte. (Doc. No. 20, at 12–13 (citing *Million v. Trustees of Central States, Se. & Sw. Areas Pension Fund*, 50 F. App'x 196, 199–200 (6th Cir. 2002)).)

The plaintiff responds, first, that his § 1132(a)(1)(B) claim is "an alternative request for relief." (Doc. No. 22, at 13.) He also argues that, where the employer makes the initial—and allegedly incorrect—determination to deny the plaintiff's claim under the policy and sends that determination to the insurer, the employer is the appropriate defendant, and the plaintiff has a colorable claim based on the denial of benefits.

The Sixth Circuit has held that, where an employer controls the administration of a plan, it is a proper defendant in an action concerning the denial of benefits. *See, e.g.*, *Daniel v. Eaton*

*Corp.*, 839 F.2d 263, 266 (6th Cir. 1988). The plaintiff alleges that Deloitte controls the administration of the Plan, and, insofar as Deloitte suggests that MetLife should have been named as a defendant instead of Deloitte, dismissal of the claim against Deloitte on that basis alone is not warranted at this juncture.

Further, because the plaintiff is alleging that Deloitte mishandled the decedent's Designation of Beneficiary Form when it recharacterized his coverage after he received a waiver of premium in 2009, the court finds that the plaintiff adequately states an alternative claim against Deloitte under § 1132(a)(1)(B) based on the denial of his claim for benefits. *See Loffredo v. Daimler AG*, 500 F. App'x 491, 495 (6th Cir. 2012) ("Section 1132 creates ERISA's civil action, permitting claims by a beneficiary 'to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.'" (citing 29 U.S.C. § 1132(a)(1)(B)).

### D.      Failure to Exhaust Claim under 29 U.S.C. § 1132(a)(1)(B)

The defendant acknowledges that the claim for wrongful denial of benefits under 29 U.S.C. § 1132(a)(1)(B) is subject to a six-year statute of limitations,[4] but it argues that such a claim may only be brought after the claimant has completely exhausted administrative remedies. In this case, when Deloitte (through MetLife) denied the claim brought by Underwood on behalf of the plaintiff, it informed her that she had sixty days after receipt of the decision set forth in its

---

[4] ERISA does not contain a statute of limitations for a claim brought under 29 U.S.C. § 1132(a)(1)(B). When a plan does not itself provide a limitations period, the Sixth Circuit applies "the most analogous state statute of limitations" of the forum state. *Patterson v. Chrysler Grp., LLC*, 845 F.3d 756, 762–63 (6th Cir. 2017) (quoting *Santino v. Provident Life & Accident Ins. Co.*, 276 F.3d 772, 776 (6th Cir. 2001)). Typically, the most analogous state cause of action to a denial-of-benefits claim under § 1132(a)(1)(B) is breach of contract. *Id.* On this basis, both parties presume that the six-year limitations period applicable to breach of contract actions in both Tennessee and New York applies to the denial-of-benefits claim in this case.

September 19, 2013 letter to appeal. She did not appeal. The defendant insists that the failure to appeal mandates dismissal of the claim.

"Although the statute itself is silent as to whether exhaustion of administrative remedies is a prerequisite to bringing a civil action[,] . . . due to ERISA's provision for the administrative review of benefits," the Sixth Circuit has "read an exhaustion requirement into the statute." *Hitchcock v. Cumberland Univ. 403(b) DC Plan*, 851 F.3d 552, 560 (6th Cir. 2017) (quoting *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 418 (6th Cir. 1998)). The administrative exhaustion requirement includes an exception for circumstances "when resort to the administrative route is futile or the remedy inadequate." *Id.* (quoting *Costantino v. TRW, Inc.*, 13 F.3d 969, 974 (6th Cir. 1994). To establish futility, "[a] plaintiff must show that 'it is certain that his claim will be denied on appeal, not merely that he doubts that an appeal will result in a different decision.'" *Fallick*, 162 F.3d at 419 (citation omitted). The determination of whether exhaustion would be futile or useless is committed to the discretion of the district court. *Id.* "The standard for adjudging the futility of resorting to the administrative remedies provided by a plan is whether a clear and positive indication of futility can be made." *Id.*

The court finds, for purposes of the defendant's Motion to Dismiss, that the plaintiff has clearly shown that exhaustion would not have yielded a different result and would have been futile. The plaintiff had not yet discovered Underwood's copy of the Designation of Beneficiary Form and had no basis for arguing that Deloitte had misplaced or mishandled the original form or that the information on the basis of which the denial decision was made was incorrect. The plaintiff had no viable argument regarding a misinterpretation or misapplication of Plan documents that might have been subject to reconsideration if an appeal had been brought. *See Ravencraft v. UNUM Life Ins. Co. of Am.*, 212 F.3d 341, 343 (6th Cir. 2000) (observing that the

purpose of the exhaustion requirement is, in part, to "enable[] plan fiduciaries to . . . correct their errors [and] interpret plan provisions"). Exhaustion would not have provided a remedy in this case. Accordingly, in the exercise of its discretion, the court finds, under the circumstances presented here, that exhaustion was not a prerequisite to bringing suit. *Accord Winkelspecht v. Gustave A. Larson Co.*, 857 F. Supp. 2d 793, 799–800 (E.D. Wis. 2012) (excusing failure to exhaust in part because the plaintiff had repeatedly been told that her father was not insured under the life insurance policy at issue at the time of his death).

**IV.     Conclusion**

For the reasons set forth herein, the Motion to Dismiss will be denied.

An appropriate Order is filed herewith.

ENTER this 22nd day of January 2019.

_____
ALETA A. TRAUGER
United States District Judge